**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Darrel Perrien,** | ) | **CASE NO. 1:05 CV 928** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **James Towles, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**Introduction**

This matter is before the Court upon the Motion for Summary Judgment of Defendants City of Cleveland, Cleveland Police Department, Sanford Watson, Edward Lohn, Kenneth Busler and James Towles (Doc. 32). In this case, plaintiff alleges excessive force by two police officers. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff, Darrel Perrien, filed this Complaint against defendants, James Towles,

1

Kenneth Busler, the City of Cleveland, the Cleveland Police Department[1], Stanford Watson and Edward Lohn.  The case was originally filed in the Cuyahoga County Court of Common Pleas and removed to this Court on the basis of federal question jurisdiction.

Around 2:30 a.m. on March 5, 2004, Cleveland Police Officer Busler operated a zone car with Officer Towles in the passenger seat.  Busler, who had his window down, heard tires squealing as he drove eastbound on Western Avenue past the intersection of West 104th Street. Busler then observed, ahead, a car weaving in the middle of the road.  Both officers then observed the car make a wide left turn off Western Avenue.  When the officers' car reached West 100th Street, the officers looked north and observed plaintiff's car with its front tires on the curb, in a muddy front tree lawn, facing westbound.  The tires of plaintiff's vehicle were spinning.  Officer Busler placed the zone car in the south bound lane, facing the side of plaintiff's car.  He turned on the zone car's emergency lights and exited the vehicle. As Busler approached plaintiff's vehicle, plaintiff spun his car's front tires in the tree lawn. Busler looked right at plaintiff and told him to stop.  Plaintiff looked directly at Busler and Busler yelled louder for him to stop. Busler could see plaintiff put the car into reverse gear and accelerate.  Towles had observed plaintiff's blank stare in response to Busler's commands.  Due to plaintiff's actions in ignoring Busler's shouts, revving up his engine and backing away from the curb, Towles exited the police car.  Towles stood behind the police car

---

[1] The Cleveland Police Department is not a proper party.  Police departments are not *sui juris* and, therefore, cannot sue or be sued.  They are "merely sub-units of the municipalities they serve." *Jones v. Ptl. D. Marcum,* 197 F.Supp.2d. 991 (S.D.Ohio 2002) (citing *Williams v. Dayton Police Dept.,* 680 F.Supp. 1075 (S.D.Ohio 1987) ). *See also Messer v. Rohrer,* No. C-3-95-270, 1997 WL 1764771, f.n. 9 (S.D.Ohio March 31, 1997) ("The Court notes that the Defendant Police Department is not a proper party to this action, as it is not *sui juris*.")

passenger door with one foot on the pavement and one foot inside the zone car. As he exited the car, Towles observed that Busler had pulled his weapon. Plaintiff continued to ignore Busler's and Towles's repeated commands to stop his car. Towles aimed his gun at plaintiff. Plaintiff then revved his engine and drove forward, directly toward Towles. As Busler and Towles observed plaintiff's vehicle heading toward Towles, and failing to stop in accordance with their commands, both officers opened fire on plaintiff. Towles fired three shots and Busler fired four rounds. The shots were fired in a "fluid continuous motion," and "in a matter of milliseconds." Plaintiff was shot in the left arm and chest. Plaintiff's car then veered away and came to a rest on the opposite side of the street. (Busler depo. 18-23, 35-36; Towles depo. 19-24; Davis depo. 13; Doc. 32 Exs. E and F)

Cleveland Police Officers Raymond Chipgus and Brian Davis had been finishing up an unrelated call on West 100th Street when they heard tires squealing south of their location. The two officers observed plaintiff make a high-speed erratic turn and end up stopped in a tree lawn. Chipgus and Davis saw Busler and Towles turn onto West 100th Street, stop their car and exit the vehicle. They witnessed plaintiff ignore the officers' commands to stop and "barrel down towards the zone car." (Chigpus depo. 17, 27; Davis depo. 12-28)

On the evening of the incident herein, plaintiff was at a bar, shooting pool, and testified at deposition that he had "no more than six beers." At his sentencing in the state court arising out of this matter, plaintiff stated that he had had "quite a bit" to drink that night and agreed that he was "heavily intoxicated." Plaintiff does not recall anything regarding the incident with the police officers, except getting out of his car. He does not remember turning onto West 100th Street, driving onto the tree lawn, or being shot. Hospital records indicate

3

plaintiff was intoxicated.  He tested positive for opiates and alcohol. (pltf. depo. 27- 37; Doc. 32 Exs. A, E and F)

Plaintiff was subsequently charged with two counts of felonious assault with a peace officer specification.  Plaintiff entered a plea of guilty to attempted felonious assault.  (Doc. 32 Ex. A)

Plaintiff thereafter filed this Complaint setting forth nine claims.  Counts One through Four allege that Busler and Towles committed an assault and battery.  Count Five alleges a claim under 42 U.S.C. § 1983 against Busler and Towles.  Count Six alleges that the City of Cleveland, the Cleveland Police Department, Stanford Watson (Director of Public Safety) and Edward Lohn (Chief of Police) failed to exercise reasonable care in hiring Busler and Towles.  Count Seven alleges that the City of Cleveland, the Cleveland Police Department, Watson and Lohn failed to supervise Busler and Towles.   Count Eight alleges that the City of Cleveland and the Cleveland Police Department breached their duty in retaining Busler and Towles.  Count Nine alleges that the City of Cleveland and the Cleveland Police Department are liable by reason of respondeat superior for the actions of Busler, Towles, Watson and Lohn.

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine

4

issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence

5

of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

While defendants move for summary judgment as to all claims and all defendants, plaintiff addresses only the § 1983 claim against Busler and Towles. Therefore, all other claims are unopposed and summary judgment is appropriate for the reasons stated in defendants' motion. Accordingly, Count Five is the sole remaining claim.

To set forth a § 1983 claim, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution... (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527 (6th Cir. 2006) (citations omitted). The second prong is satisfied. Thus, the Court must determine whether there is a factual dispute regarding whether plaintiff was deprived of his Fourth Amendment right to be free from excessive force.[2]

Busler and Towles assert the defense of qualified immunity. "The doctrine of qualified immunity shields government officials from liability, as well as from suit, so long as their official conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardy v. Jefferson Community College*, 260

---

[2] While the Complaint alleges that plaintiff's Fourth and Fourteenth Amendment rights were violated by defendants' use of excessive force, plaintiff addresses his claim in the context of the Fourth Amendment only.

F.3d 671 (6th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ).   The Sixth Circuit has  explained:

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps.  As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that 'the officer's conduct violated a constitutional right.' *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.' *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  'On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.' 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett*, 310 F.3d at 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

With regard to the question whether the right was clearly established, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.

Therefore, this Court must first determine whether plaintiff has demonstrated a violation of his constitutionally protected rights under the Fourth Amendment.

"Because the Fourth Amendment protects citizens from unreasonable seizures, excessive force claims are analyzed under the Fourth Amendment 'reasonableness' standard." *Tallman v. Elizabethtown Police Department,* 167 Fed.Appx. 459, 462 (6th Cir. 2006) (citing *Graham*, 490 U.S. at 395).   In order to make a showing of excessive force under the Fourth Amendment's "objective reasonableness" test, courts must view the reasonableness of a particular use of force in light of the totality of the circumstances and analyze the facts "'from

7

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396), *Sigley,* 437 F.3d at 534.  When conducting a reasonableness analysis, courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  *See also Sigley,* 437 F.3d at 534.  A determination of reasonableness must also consider the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, *Sigley,* 437 F.3d at 534.

Defendants assert that Towles's and Busler's use of deadly force did not violate any constitutional right because it was reasonable under the particular circumstances.  For the following reasons, this Court agrees.

The four police officers testified that they believed that Officer Towles's life was in immediate danger as they witnessed plaintiff's vehicle quickly moving straight for him. (Busler depo. 20; Towles depo. 23, 27; Chipgus depo. 18; Davis depo. 13).  Although the "test is not whether [defendants] subjectively believed [Towles] to be in danger of serious harm, but whether it was objectively reasonable for [defendants] to react to [plaintiff] with deadly force," *Brooks v. Sneed,* 1994 WL 679376 (6th Cir. Dec. 5, 1994) (citations omitted), the fact that all witnesses perceived the situation to be an imminent threat to Towles evidences that a reasonable officer would also.

Plaintiff's own expert, Michael Hunter, testified at deposition that plaintiff's car

8

moved straight toward Towles. (Michael Hunter depo. 128). Plaintiff's expert concedes that the use of deadly force was justified if the car was driving toward Towles:

> Q. And, in fact, your opinion is that they were justified, at least in starting to shoot; is that right?
>
> A. My opinion is that they may have been justified in starting to shoot.
>
> Q. And why do you qualify that with just a may?
>
> A. If there was, in fact, a hazard, if there was, in fact, a man driving at Officer Towles, either officer could think that Officer Towles's life was in danger and be able to justify shooting to stop that danger from happening.

(Hunter depo. 69).

Moreover, plaintiff's expert testified that plaintiff's car would have been traveling at a rate of at least 20 feet per second when it accelerated toward Towles. (Hunter depo. 77). Officers Davis and Chipgus testified that the time span involving plaintiff's acceleration toward Towles and the vehicle coming to rest on the opposite side of the street amounted to "two seconds" or "seconds." (Davis depo. 28; Chipgus depo. 27). Thus, it is not disputed that Towles's and Busler's decision to open fire was a "split-second judgment," in circumstances that were "tense, uncertain, and rapidly evolving."

Additionally, plaintiff admitted that he attempted to use deadly force against the officers when he entered a plea of guilty to attempted felonious assault. Plaintiff asserts that he pleaded guilty "in an attempt to put the incident behind him." (Doc. 39 at 3). Plaintiff, however, cannot evade his admission by now offering this excuse.

Plaintiff asserts that while he was intoxicated while driving, the lack of control over his car was caused by a failed tie rod end, which resulted in "erratic steering input and handling capabilities," as well as the wet road conditions caused by earlier rain. (*Id.*) There

9

is no evidence, however, that the police officers knew this.  And, assuming this defect caused erratic driving, plaintiff made no attempt to stop his car despite the repeated commands to do so.  In fact, he spun his wheels, put the car in reverse and then in drive- all while disregarding defendants' shouts to halt.

Plaintiff additionally states in his brief that the acceleration forward of his car was an attempt to drive away from the scene and not an attempt to harm the police officers.  Even if true, plaintiff's subjective intent is irrelevant to this Court's determination as to the objective reasonableness of defendants' actions.  All witnesses reasonably believed he intended to drive at Towles.  Plaintiff does not dispute that his car accelerated toward the zone car where Towles was standing.  There is no evidence that defendants were aware of plaintiff's subjective intent.

Plaintiff refers extensively to a Cleveland Division of Police General Police Order involving the use of deadly force which, among other things, requires police officers to consider alternatives to using force.  Plaintiff argues that defendants failed to uphold the duties included in the Order.  Plaintiff, however, fails to submit a copy of this document.[3] Nevertheless, as the Sixth Circuit has recognized:

> [U]nder *Graham*, we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Smith v. Freland,* 954 F.2d 343, 347 (6th Cir. 1992).  More importantly, the Sixth Circuit has

---

[3] Plaintiff assert that it was included with exhibits used in Michael Hunter's deposition.  While the deposition was filed, however, the exhibits were not.

rejected the argument put forth by plaintiff:

> [T]he fact that [the police officer's] actions may have violated [the City's] policies regarding police use of force does not require a different result. Under § 1983, the issue is whether [the police officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983. To hold that cities with strict policies commit more constitutional violations than those with lax policies would be an unwarranted extension of the law, as well as a violation of common sense. [Plaintiff's] position, if adopted, would encourage all governments to adopt the least restrictive policies possible.

*Id.* at 347-348. *See also Tallman,* 167 Fed.Appx. at footnote 9.

Plaintiff also appears to argue that because all the shots were fired from the side or from behind plaintiff's vehicle (Richard Ernst depo. 31; Hunter depo.140), plaintiff's vehicle was past Towles by the time the shots were fired and, therefore, plaintiff no longer posed a threat to the officers. Plaintiff, however, fails to acknowledge that the officers were positioned differently. Busler was standing facing the passenger side of plaintiff's vehicle, at the left front fender of the police car, and began firing when plaintiff's vehicle became parallel with the front of the zone car and it became apparent that plaintiff's car was "heading right towards" Towles. Busler fired in Towles's defense and his shots were from a side or rear angle, fired into the right-hand side of plaintiff's vehicle as it passed by toward Towles. (Busler depo. 36, 41; Ernst depo. 36-39). Towles, standing beside the passenger side of the zone car, fired in his own defense as plaintiff's vehicle came toward him. Further, plaintiff does not dispute the officers' testimony that the shots were fired in rapid succession. Plaintiff's expert concedes that both officers fired all shots "at once." (Hunter depo. 107). Thus, plaintiff's suggestion that the officers should not have continued to shoot once plaintiff's vehicle was in a position where it could no longer hit Towles has no support in the

11

record. [4]

Finally, plaintiff asserts that his case is similar to *Sigley, supra,* and *Smith v. Cupp,* 430 F.3d 766 (6th Cir. 2005). This Court disagrees.

In *Sigley,* the plaintiff's decedent was fatally shot by a police officer as he was attempting to flee an undercover drug bust. The Sixth Circuit reversed the district court's granting of summary judgment, finding that disputed issues of fact precluded dismissal. There, Parma Heights police officers had arranged a controlled purchase, by an informant, of drugs in a parking lot. The informant and decedent parked their cars in opposite directions, with their drivers' side windows side-by-side to perform the transaction. After the drug transaction was complete, police vehicles attempted to block decedent's car to prevent him from escaping the parking lot. The police officer who shot the decedent exited his vehicle with his weapon drawn. He, and another officer, yelled at decedent to stop, informing him that he was under arrest. Attempting to flee, decedent was able to back his car up and then accelerate forward to free himself from the block. The police officer who shot the decedent testified at deposition that as decedent accelerated forward, he began to run to a nearby fence to avoid the moving vehicle. The officer then realized that he could not make it to the fence so as to avoid the vehicle and so fired one shot through decedent's open driver's side window. The informant, however, testified at deposition that a police officer was running alongside decedent's vehicle and pointed a weapon down and into the window, and that prior to the

---

[4] In addition to Hunter's deposition, filed with this Court and referred to herein, plaintiff makes reference to Hunter's report which was not filed by plaintiff. Plaintiff also relies on an investigative report issued by Mark L. Angelotta. Plaintiff, however, fails to attach this report as well.

firing the officer was slightly behind the vehicle.  The informant further testified that the decedent swerved to try to get around the officers.  Additionally, the police officer's post-incident statement did not mention that he ran to the fence for safety after the decedent started to drive away.  This was only mentioned at his deposition.   Based on this evidence, the court found unresolved factual issues regarding whether the police officer was chasing after decedent's car or whether the car was turning into the officer when he fired.

Plaintiff herein asserts that his case is similar because he too was attempting to flee the scene at the time he was shot by police, and that there are factual disputes.  This Court disagrees.  In *Sigley,* while the testimony of the informant, the testimony of the officer and the discrepancy between the officer's statement and his deposition raised an issue of fact as to whether the life of the officer was in danger, the same is not true here.  As discussed above, plaintiff does not dispute the testimony of the four police officers and his own expert that plaintiff's vehicle was moving directly toward Towles in a rapid motion and that this posed an imminent danger to Towles.  In fact, plaintiff pleaded guilty to attempted felonious assault, thereby admitting that he attempted to drive into Towles.

Similarly, in *Smith, supra,* disputed factual issues precluded summary judgment in a case where the decedent was shot and killed by a police officer, who stood outside his cruiser, while the decedent attempted to flee after gaining control of the police officer's car. The officer had placed the decedent in the police cruiser after placing him under arrest for making harassing telephone calls. While the officer spoke to the tow truck driver, the decedent gained control of the car.  The plaintiff presented the tow truck driver's testimony which showed that the officer shot the decedent after the cruiser was past the officer and there was no immediate

danger to anyone in the vicinity. The court concluded that a reasonable jury could find that the officer did not fire as the vehicle was bearing down on him. Additionally, the court noted that the officer's use of force was even more unreasonable given that the decedent had been cooperative up to the point when he secured the car, and had been arrested for a nonviolent offense. Again, plaintiff herein has not identified disputed facts in a like manner. Rather, the only evidence shows that plaintiff's vehicle was directed toward Towles. Moreover, plaintiff had been uncooperative prior to this moment.

For these reasons, plaintiff fails to demonstrate the violation of a constitutional right. Because he does not do so, this Court need not proceed to the inquiry into whether the right was clearly established. *Cherrington,* 344 F.3d at 636. Plaintiff's § 1983 claim fails.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED. IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/30/06